UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Raphael Mendez, <br><br> Plaintiff, <br><br> v. <br><br> FMC Rochester, Minnesota; <br> Mr. Beadling, Correctional Officer; <br> Steve Kallis, Warden, SiS; and Mr. <br> Chad Orum, Unit 1/2 Manager, <br><br> Defendants. | Case No. 20-CV-1717 (KMM/JFD) <br><br><br> **REPORT AND RECOMMENDATION** |

This case comes before the Court on Defendants' Motion to Dismiss *pro se* Plaintiff Raphael Mendez's Complaint filed on August 5, 2020, against Defendants Federal Medical Center ("FMC") Rochester, Correctional Officer Benjamin Beadling, Warden Steve Kallis, and Unit Manager Chad Orum. (Defs.' Mot. Dismiss, Dkt. No. 13; Compl., Dkt. No 1.) Defendants' Motion to Dismiss has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. In their Motion, Defendants argue that Mr. Mendez's Complaint fails to state a claim for which relief can be granted and should therefore be dismissed. (Defs.' Mem. Supp. Mot. Dismiss at 1, Dkt. No. 14; Defs.' Reply, Dkt. No. 18.) Mr. Mendez opposes Defendants' Motion and asks this Court to deny it. (Pl.'s Mem. Opp'n Mot. Dismiss, Dkt. No. 17; Pl.'s July 13 Letter, Dkt. No. 19.)

Finding that Mr. Mendez's Complaint fails to state a claim for which relief can be granted, the Court recommends granting Defendants' Motion and dismissing with prejudice Mr. Mendez's Complaint as follows.

## I. BACKGROUND

Mr. Mendez is a pretrial detainee. (Compl. at 1.) *See also Mendez v. Kallis*, No. 21-CV-1147 (PJS/BRT), 2021 WL 3476681, at *1 (D. Minn. May 27, 2021), *R. & R. adopted in part*, No. 21-CV-1147 (PJS/BRT), 2021 WL 2911171 (D. Minn. July 12, 2021). He was indicted by a federal grand jury in the Virgin Islands in 1990 for assault with a deadly weapon and related offenses, *see In re Mendez*, 220 F. App'x 75, 76 (3d Cir. 2007) (citing *United States v. Mendez*, Crim A. No. 90-0043 (D.V.I)), but found mentally incompetent to stand trial and was, pursuant to 18 U.S.C. § 4241(d), committed to the Attorney General's custody and sent to the Federal Correctional Institution in Butner, North Caroline ("FCI-Butner") for treatment. *Id.* FCI-Butner's Warden subsequently filed a petition for Mr. Mendez's civil commitment under 18 U.S.C. § 4246. *Id.* The U.S. District Court for the Eastern District of North Carolina (the judicial district in which FCI-Butner is located) granted the petition and civilly committed Mr. Mendez, finding that he suffered from a mental disease or defect and that, as a result, his release would create a substantial risk of harm to people or property. *See Mendez v. Paul* (hereinafter *Paul I*) No. 18-CV-2817 (PJS/HB), 2019 WL 8370790, at *1 n.1 (D. Minn. Dec. 10, 2019), *R. & R. adopted*, No. 18-CV-2817 (PJS/HB), 2020 WL 563941 (D. Minn. Feb. 5, 2020), *aff'd*, No. 20-1353, 2020 WL 4876327 (8th Cir. June 1, 2020). He is currently hospitalized at FMC Rochester

in Rochester, Minnesota. Defendants in this action are three members of FMC Rochester's staff, along with the facility itself.

### A. Mr. Mendez's Complaint

In his Complaint's caption, Mr. Mendez contends that he brings this action against Defendants "for instigating foreseeable harm under 42 U.S.C. § 1986 while having the power to PREVENT but refuses [sic] to prevent." (*Id.* at 1 (capitalization in original).) Mr. Mendez argues he is a pretrial civil detainee who is not legally imprisoned because the court that committed him did not have jurisdiction to decide his case. (Compl. ¶¶ 14–15.) He states that he has notified the Warden of FMC Rochester of his false imprisonment and of his "SADISTICAL Treatment" [sic] while confined in FMC Rochester. (*Id.* at 1; *see also* Pl.'s Ex. 1 at 4 (documenting emails sent between Mr. Mendez and Warden Kallis).) He argues that, as a pretrial detainee, he should have special protections, including cameras monitoring his location in the facility. (Compl. at 1.)

Mr. Mendez's main allegations in this Motion to Dismiss concern his cellmate. Mr. Mendez alleges that he is housed with a cellmate who, unlike himself, "is being treated with antipsychotic drug [sic][,]" and that on July 25, 2020, he had an interaction with his cellmate that he believed could escalate into a future fight and endanger Mr. Mendez's safety. (*Id.* ¶¶ 2–5.) Mr. Mendez claims that as he listened to his "MP-3 Player" on that date, his cellmate tried to speak with him on three occasions. (*Id.* ¶ 3.) After removing his headphones several times to hear his cellmates' comments, Mr. Mendez finally told his cellmate that he would not remove his headphones again. (*Id.* ¶ 4.) Then Mr. Mendez and his cellmate "squared off, as if to Fight" and Plaintiff stated he would not be treated like

"someone downstairs called Prinstein [sic]" who the cellmate had allegedly sung to while Prinstein tried to sleep. (*Id.*) Mr. Mendez alleges that, after additional exchanges of hostile words and some invitations to fight, "nothing happened Face to Face" and Mr. Mendez left to seek Mr. Beadling to make a complaint about the incident. (*Id.* ¶¶ 5–6.)

Based on the alleged threat posed by his cellmate, Mr. Mendez requested a transfer to a different cell from his unit officer, Mr. Beadling. (*Id.* ¶¶ 5–7.) Mr. Beadling denied Mr. Mendez's relocation request. (*Id.* ¶¶ 8, 10.) Mr. Mendez claims he told Mr. Beadling that if the BOP did not relocate him, he would file a complaint with Warden Steve Kallis, who is also the Special Investigative Supervisor ("SiS"), and with the Inspector General, to report sadistic behavior by staff at FMC Rochester, including sadistic behavior by Mr. Beadling and Unit Manager Chad Orum. (*Id.* ¶¶ 12–13.) Mr. Mendez claims he filed the instant Complaint because Mr. Beadling did not relocate him to a different cell. (*Id.* ¶ 13.)

As relief for alleged violations of his rights and injuries, Mr. Mendez seeks an injunctive order for special protections, but no monetary damages. (*Id.* at 1, ¶ 14.) The requested protective actions that Mr. Mendez seeks include: an order requiring that Defendants take special protective actions to safeguard Mr. Mendez while he awaits assistance from "other agencies";[1] relocation to a cell without a cellmate; a cell equipped

---

[1] Mr. Mendez lists the "other agencies" from whom he has sought help, including: United States Congressman Jim Hagedorn of Minnesota's 1st District; private citizen Taylor A. Zinkle; United States Senator Thom Tillis of North Carolina; former United States Senate Select Committee on Ethics Chief Counsel and Staff Director Deborah Sue Mayer; Congressional Delegate Stacey E. Plaskett of the United States Virgin Islands' at-large Congressional District; and member of the United States Virgin Islands Senate Janelle K. Sarauw, who chairs the Virgin Islands Senate's Committee on Rules and Judiciary. (*Id.* at 1–2.)

4

with video monitoring because his situation "is now similar to GEORGE FLOYD"; or alternatively, transfer to a prison facility near Washington D.C. so that he can request "a U.S. Congressional Evidentiary Hearing, and a Hearing under 18 U.S.C. [§] 4247." (*Id.* at 1–2, ¶¶ 14–15.)

Mr. Mendez includes several legal authorities with his Complaint, including excerpts from 28 C.F.R. § 551.100–01 (concerning the BOP's institutional management of pretrial inmates), 5 U.S.C. § 702 (concerning the right to judicial review of agency action that causes a person to suffer a legal wrong under the Administrative Procedure Act ("APA")), and 42 U.S.C. § 1986 (concerning civil rights actions against individuals who knowingly fail to act to prevent wrongful actions listed in § 1985). (Pl.'s Ex. 1 at 1–3, Dkt. No. 1-1.)

### B.  Defendants' Motion to Dismiss

Defendants now bring this Motion pursuant to Federal Rule of Civil Procedure 12(b)(6) and argue that this Court should dismiss Mr. Mendez's Complaint because he fails to state any claim against the BOP's facility or employees in their official capacities for which this Court can grant relief under 42 U.S.C. § 1986, the APA, or the Eighth Amendment. (Defs.' Mem. Supp. Mot. Dismiss at 2.) Defendants also claim that Mr. Mendez has not pleaded facts sufficient to bring an action against any Defendant in their individual capacity under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), because he neither alleges violations in any Defendant's individual capacity, nor seeks monetary damages. (*Id.* at 11–12.) Defendants also allege

that a *Bivens* action, even if properly pleaded, would fail for numerous other reasons. (*Id.* at 11–19.)

In his Memorandum in Opposition to Defendants' Motion, Mr. Mendez reasserts that the court that issued his civil commitment order did not have jurisdiction; that, as a result, Defendants have both conspired to falsely imprison him at FMC Rochester, and have falsely imprisoned him there; that Defendants have caused Mr. Mendez to suffer the "threat" of "other inmates of abnormal [and] irrational behavior"; that he is a "Pretrial Civil Detainee" and is therefore owed "better Protective Right [sic]" that includes housing in a single cell and "[a] video camera" in his cell or "the Hall ways [and] Television Rooms" upon request; that the denial of such video camera requests are evidence that FMC Rochester's "staffs [sic] does wrong [and] they don't want witnesses against themselves"; that the BOP regularly causes prisoner/detainee injuries or deaths by "refusals" like that which Mr. Mendez alleges he is suffering—and which he likens to the murder of George Floyd; that Mr. Mendez has suffered "Third Degree Assault under Virgin Islands Criminal Code Title 14 VIC 297(2)"; and that he seeks mandamus relief. (Pl.'s Mem. Opp'n Mot. Dismiss ¶¶ 2, 5, 7–14, 17–18, 20, 22, 25, 27–28, 31–35, Dkt. No. 17; *see also* Pl.'s July 13, 2021 Letter.)

In reply to Plaintiff's response, Defendants argue that Mr. Mendez cannot now plead false imprisonment or seek mandamus relief because his Complaint does not set forth those claims. (Defs.' Reply at 1–2, Dkt. No. 18.) Defendants also reiterate their previous contention that Mr. Mendez fails to state a claim under 42 U.S.C. § 1986, the APA, the Eighth Amendment, or *Bivens*, and that—to the extent he fails to respond to Defendants'

6

arguments on these points—Mr. Mendez concedes them and further justifies granting their Motion. (*Id.* at 2–5 (citing *Espey v. Nationstar Mortg., LLC*, No. 13-CV-2979 (ADM/JSM), 2014 WL 2818657, *11 (D. Minn. June 19, 2014) (finding a plaintiff's failure to respond to a defendant's arguments in their memorandum amounts to waiver and—on that basis alone—a defendant's motion to dismiss should be granted, but also addressing the merits of the claim)).)

Having read the parties' filings carefully, the Court will construe Mr. Mendez's Complaint to allege that the actions of the BOP as an agency, or individual Defendants in their official capacities, have violated his constitutional or statutory rights or have otherwise caused him injury. After setting out the legal standard for the Court's review of this Motion, the Court will consider Defendants' arguments for dismissal.

## II.     LEGAL STANDARD

When a defendant moves to dismiss an action under Rule 12(b)(6), courts "'must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader.'" *Paul I*, 2019 WL 8370790, at *2 (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a plaintiff's claims to be facially plausible, they must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Courts should construe *pro se* complaints liberally, but a *pro se* plaintiff must

7

still allege sufficient facts to support the claims advanced. *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.   DISCUSSION

There are a few initial matters. First, Mr. Mendez has claimed to be a pretrial civil detainee who is unlawfully held and should not be under the BOP's jurisdiction. (Compl. at 1.) Mr. Mendez has raised challenges to his custodial status in this district repeatedly in habeas petitions, and these petitions have been uniformly denied. *See Kallis*, 2021 WL 3476681, at *1 (citing *Mendez v. Paul*, No. 19-CV-0183 (PAM/LIB), 2019 WL 5150038, at *3 (D. Minn. July 23, 2019), *R. & R. adopted*, 2019 WL 3928871 (D. Minn. Aug. 20, 2019), *aff'd*, No. 19-2935, 2020 WL 1154790 (8th Cir. Jan. 22, 2020)).

Second, tied to this claim is a claim that, because he committed a territorial offense in the Virgin Islands, and because he alleges there is no federal jurisdiction over him, nor should he have been civilly committed under a federal statute, the BOP is falsely imprisoning him. (Compl. ¶¶ 14–15; Pl.'s Mem. Opp'n Mot. Dismiss ¶ 2.) However, Mr. Mendez has alleged variations of this false imprisonment claim in several previous actions in this district, and courts have repeatedly found Mr. Mendez's claim barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Paul I*, 2019 WL 8370790, at *5 (citing *Mendez v. Meek*, No. 18-CV-2332 (ECT/HB), 2018 WL 6517460, at *1 n.1 (D. Minn. Sept. 27, 2018), *R. & R. adopted*, 2018 WL 6259196 (D. Minn. Nov. 30, 2018), *aff'd*, 775 F. App'x 264 (8th Cir. 2019)). Beyond this, Courts have found that there is no authority that suggests the Federal Government lacked the authority to prosecute Petitioner for violations of territorial law, and that 18 U.S.C. § 4241, the federal statute under which Mr. Mendez was civilly

committed originally, "does not require that commitment be premised upon a Federal crime." *Mendez v. Bureau of Prisons*, No. 08-CV-4971 (JMR/RLE), 2009 WL 3856925, at *8–9 (D. Minn. Nov. 17, 2009), *aff'd*, 391 F. App'x 577 (8th Cir. 2010) (citations omitted). Thus, the fact that Mr. Mendez was indicted for a territorial offense neither shows that his civil commitment under federal law was improper, nor that his detention in a federal correctional or medical facility is unlawful. (*Id.*)

Regarding these preliminary matters, the Court understands Mr. Mendez's false imprisonment claims to be background for his present substantive claim, which the Court takes to be as follows: the BOP denied Mr. Mendez's request to be rehoused in a cell without his cellmate, and to have video monitoring of certain areas in FMC Rochester's facility.

The Court construes this claim as one made against Defendants in their official rather than individual capacities because Mr. Mendez has not alleged individual capacity violations and does not seek monetary damages. *See Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("In actions against officers, specific pleading of individual capacity is required to put public officials on notice that they will be exposed to personal liability."); *see also Bivens*, 403 U.S. at 410 (Harlan, J., concurring) ("It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court."). Thus, the Court will next consider the potential official-capacity claims that Plaintiff's allegations may support, including claims under Title 42 U.S.C. §§ 1985(3) and 1986; the APA; Title 42 U.S.C. § 1983; and Title 28 U.S.C. § 1361.

### A. Title 42 U.S.C. §§ 1985(3) and 1986

Mr. Mendez alleges he brings this action against Defendants "for instigating foreseeable harm under 42 U.S.C. § 1986 while having the power to PREVENT but refuses [sic] to prevent." (*Id.* at 1 (capitalization in original).) In support of his Complaint, he attached an excerpt from § 1986. (Pl.'s Ex. 1 at 3.) However, Defendants argue that Mr. Mendez fails to state a valid § 1986 claim.

Section 1986 provides a cause of action against "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do[.]" 42 U.S.C. § 1986. "A claim under § 1986 is dependent on a valid claim under § 1985(3)." *Paul I*, 2019 WL 8370790, at *5 (citing *Adams v. Boy Scouts of Am.–Chickasaw Council*, 271 F.3d 769, 774 n.8 (8th Cir. 2001)). To sufficiently plead a conspiracy claim under § 1985(3), "a plaintiff must allege: '(1) a conspiracy; (2) for the purpose of depriving another of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or deprivation of a legal right.'" *Paul I*, 2019 WL 8370790, at *5 (D. Minn. Dec. 10, 2019) (quoting *Ester v. Faflak*, No. 05-CV-0049 (PJS/JSM), 2006 WL 2700288, at *13 (D. Minn. Sept. 18, 2006), *aff'd*, 250 F. App'x 756 (8th Cir. 2007)). A plaintiff must also sufficiently allege the conspiracy is motivated by "a racial or class-based animus" and that "the parties reached some agreement and conspired together to deprive plaintiff of a federal right." *Id.* (citing *Ester*, 2006 WL 2700288, at *13–14) (cleaned up).

Here, Mr. Mendez does not allege facts that support a plausible inference that any of the Defendants acted with a racial or class-based animus in refusing to house him in a cell apart from his cellmate or to erect video cameras at particular locations. Likewise, Mr. Mendez does not allege with particularity that Defendants agreed and conspired together to deprive him of any federal right. The Court thus recommends dismissal of Mr. Mendez's § 1985(3) claim. Additionally, because Mr. Mendez does not allege facts to support a plausible § 1985(3) claim, dismissal of his contingent § 1986 claim is likewise warranted.

### B. Administrative Procedure Act

Mr. Mendez alleges that he asked the BOP to relocate him and to place video cameras at certain locations, and that the agency wrongly denied his request. (Compl. ¶¶ 8, 10.) In support of his Complaint, he attached an excerpt from the APA, 5 U.S.C. § 702. (Pl.'s Ex. 1 at 2.) However, Defendants argue that Mr. Mendez fails to state a valid APA claim against the agency based on the facts alleged. (Defs.' Mem. Supp. Mot. Dismiss at 6–7.)

The APA provides, in relevant part, that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "The APA also provides, however, that courts may not review agency action when '(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law.'" *Smith v. Warden of Duluth Prison Camp*, No. 18-CV-2555 (WMW/LIB), 2019 WL 3325837, at *4 (D. Minn. Apr. 23, 2019), *R. & R. adopted as modified*, No. 18-CV-2555 (WMW/LIB), 2019 WL 3323063 (D. Minn. July 24, 2019) (citing 5 U.S.C. § 701(a)).

Here, Mr. Mendez cannot plausibly allege an unlawful housing-related decision is subject to judicial review under the APA for a simple reason: the BOP's decisions regarding prisoner and detainee housing are expressly excluded from APA judicial review. "It is well-settled that the BOP's determinations regarding prisoner placements are not subject to review under the APA." *Smith*, 2019 WL 3325837, at *4 (citing 18 U.S.C. § 3625); *see also* 18 U.S.C. § 3625 (stating that § 702 of the APA does not apply to the determinations, decisions, or orders of the BOP's administration of prison sentences, which includes facility housing and transfer decisions); 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment."). Likewise, the BOP's security considerations in operating corrections facilities—including in locating prisoners and detainees—are also accorded wide-ranging deference by the courts. 18 U.S.C. § 3621(b) (stating the BOP has discretion, when deciding where to place prisoners, to consider security concerns of the BOP and prisoner security designations); *see also Bell v. Wolfish*, 441 U.S. 520, 546–47 (1979) (discussing judicial deference to BOP security-related decision-making). Therefore, Mr. Beadling's refusal to relocate Mr. Mendez to locations with the video monitoring requested, and Warden Kallis' support of that refusal, are agency actions that are not subject to judicial review. Finding Mr. Mendez has not alleged facts plausibly supporting an inference that the BOP committed unlawful actions that are reviewable by this Court under the APA, the Court finds that Mr. Mendez also fails to state a valid claim under the APA and recommends dismissal of his Complaint as to this claim.

**C.   Title 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment**

Defendants next argue that Mr. Mendez fails to state a valid Eighth Amendment claim. (Defs.' Mem. Supp. Mot. Dismiss at 7–10.) The Court concludes that because Mr. Mendez is a pretrial detainee, his constitutional protections relating to his conditions of confinement come not from the Eighth Amendment, but from the Fourteenth Amendment's Due Process Clause. *See Mendez v. FMC Minnesota* (hereinafter *FMC Minnesota*), No. CV 16-845 (ADM/BRT), 2017 WL 2312889, at *6 (D. Minn. Mar. 10, 2017) (citing *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply.")), *R. & R. adopted*, No. CV 16-845 ADM/BRT, 2017 WL 2312870 (D. Minn. May 26, 2017), *aff'd*, 728 F. App'x 607 (8th Cir. 2018). The Court understands this claim as a Title 42 U.S.C. § 1983 action because Mr. Mendez seeks relief for alleged violations of his federal constitutional rights—here, a violation of the Due Process Clause of the Fourteenth Amendment. *See Mendez v. Hammel,* No. CV 10-2231 (ADM/RLE), 2010 WL 3384800, at *2 (D. Minn. June 8, 2010), *R. & R. adopted*, No. CV 10-2231 (ADM/RLE), 2010 WL 3384801 (D. Minn. Aug. 23, 2010).

Under the Due Process Clause, as a pretrial detainee, Mr. Mendez "cannot be punished at all, much less 'maliciously and sadistically.'" *Id.* (citations omitted). Beyond this, pretrial detainees are still afforded all the protections of the Eighth Amendment. *See FMC Minnesota*, 2017 WL 2312889, at *6 (citing *Roblero–Barrios v. Ludeman*, Civil No.

13

07–4101 (MJD/FLN), 2008 WL 4838726, at *7 (D. Minn. Nov. 5, 2008) (finding the Eighth Amendment "applicable to civilly committed patients challenging the conditions of confinement under [due process]."); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) ("[C]ivilly-committed persons, like pretrial detainees, are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment.").)

The Supreme Court has interpreted the Eighth Amendment to impose duties on prison officials to, *inter alia*, take reasonable measures to guarantee the safety of the inmates[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984); *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010)). This includes a duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (citation omitted). While Mr. Mendez is not a prisoner, these same Eighth Amendment duties apply to prison officials under the Fourteenth Amendment to protect detained non-prisoners. *See Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010) (citing *Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001) (affirming that "the Fourteenth Amendment provides detainees at least the same level of constitutional protection as the Eighth Amendment does to prisoners")).

The question under Due Process regarding Defendants' Motion to Dismiss turns on whether Mr. Mendez has sufficiently alleged a conditions-of-confinement claim regarding Defendants' alleged failure to protect him. This requires Mr. Mendez to plausibly allege that he faced "a pervasive risk of harm and that the prison officials failed to respond reasonably to that risk.'" *Vandevender v. Sass*, 970 F.3d 972, 977 (8th Cir. 2020) (quoting *Falls v. Nesbitt*, 966 F.2d 375, 378 (8th Cir. 1992)). In this Circuit, a "pervasive risk of

14

harm" is not plausibly alleged by pointing to a single incident or isolated incidents, although it does not require pleading "a reign of violence and terror in the particular institution." *Id.* (quoting *Andrews v. Siegel*, 929 F.2d 1326, 1330 (8th Cir. 1991)). A failure-to-protect pleading is sufficient where it alleges violence "occur[s] with sufficient frequency that prisoners are put in reasonable fear for their safety" and prison officials are "reasonably apprise[d] . . . of the existence of the problem and the need for protective measures." *Id.* (cleaned up). Thus, the question is whether Mr. Mendez has pleaded a plausible allegation that there have been sufficiently frequent incidents putting him in reasonable fear for his safety.

Here, the BOP's alleged denial of Mr. Mendez's relocation and video monitoring requests relate to only one incident with his cellmate occurring on July 25, 2020. (Compl. ¶¶ 2–5.) Allegations of a single, isolated incident are insufficient to support a plausible failure to protect claim. *See Vandevender*, 970 F.3d at 978. Mr. Mendez also framed this single incident within a larger context, alleging that the BOP has engaged in "a common Practice" of "refusals"—including allegedly refusing to remedy wrongful detainment, refusing to provide medical care, refusing "to provide inmates with witnesses[,]" and refusing "to do the Right thing[.]" (Pl.'s Mem. Opp'n Mot. Dismiss ¶¶ 22–26.) These allegations about a pattern of "refusals" as pleaded lack coherence. It is not clear how these seemingly disconnected BOP actions, even when viewed in the light most favorable to Mr. Mendez, could create a plausible inference that violence at FMC Rochester is so frequent that it is putting Mr. Mendez in reasonable fear for his safety. Therefore, viewing the

Complaint in the light most favorable to Mr. Mendez, the Court finds that Mr. Mendez also fails to state a valid due process claim.

### D. Title 28 U.S.C. § 1361

In the interest of thoroughness, the Court will also briefly address Plaintiff's request for mandamus relief raised only in his Memorandum opposing Defendants' Motion. (Pl.'s Mem. Opp'n Mot. Dismiss ¶ 34 ("This is a Rare, but extraordinary case that deserves the Drastic Remedy of a MANDAMUS writ.") (capitalization in original).) Defendants argue mandamus relief cannot be raised in response to a motion to dismiss where it has not been pleaded in the Complaint, and argue it is unavailable where, as here, all Defendants are sued in their official capacities. (Defs.' Reply at 4 n.1.) "'Under 28 U.S.C. § 1361, mandamus may issue against an officer of the United States only when the plaintiff has a clear right to relief, the defendant has a clear duty to perform the act in question, and the plaintiff has no adequate alternative remedy.'" *Paul I*, 2019 WL 8370790, at *6 (quoting *Borntrager v. Stevas*, 772 F.2d 419, 420 (8th Cir. 1985)). Mandamus relief "'is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'" *Id.* (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Here, Mr. Mendez has not alleged facts that create a plausible inference that he had a clear right to be rehoused based on his complaint against his cellmate, or a right to video monitoring of certain facility locations, and Plaintiff also has not alleged that he exhausted all other avenues of relief, such as exhaustion of FMC Rochester's grievance procedure for

16

detainee complaints. Therefore, the Court concludes Mr. Mendez also fails to state a claim for mandamus relief under § 1361.

## IV.  RECOMMENDATION

In sum, having read the parties' briefs carefully, and having construed Mr. Mendez's Complaint liberally, the Court finds that he has not adequately alleged that the described actions of the BOP as an agency, or of any Defendant in their official capacity, have violated his constitutional or statutory rights or have otherwise caused him injury. Finding that Mr. Mendez's Complaint fails to plausibly allege such violations or resulting rights to relief under the Constitution or relevant statutes, this Court recommends that his Complaint be dismissed with prejudice for failure to state a claim.

Based upon the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Defendant's Motion to Dismiss (Dkt. No. 13) be **GRANTED**;

2. This action be **DISMISSED with prejudice**; and

3. **JUDGMENT BE ENTERED ACCORDINGLY**


Dated: January 12, 2022                         ___*s/ John F. Docherty*_____
                                                JOHN F. DOCHERTY
                                                United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).